Cheshire, ⎰
April 7, 1903. ⎱

### CHELLIS & a. *v.* GRIMES & a.

Where an agreement for a sale of personalty provides that possession is to be given at a future date, the title does not pass until delivery; and the vendee cannot maintain replevin for the property against the vendor in possession, who refuses to complete the contract.

REPLEVIN, for five horses, four hacks, and other personal property used in hacking. Trial by the court. Transferred from the April term, 1902, of the superior court by *Wallace,* C. J.

November 21, 1901, the plaintiffs and the defendants entered into a written agreement, by which the defendants, in consideration of the agreement of the plaintiffs to build for them five houses, agreed to convey to them their homestead and to give them a bill of sale of their hack business, including the property in question, possession of the hack business to be given December 1, 1901, and possession of the homestead to be given May 1, 1902. December 2, 1901, the defendants, although requested, declined to give a bill of sale or deliver the property in accordance with the terms of the agreement. The plaintiffs had no title to the property replevied except under this agreement. Subject to exception, the court ruled that the plaintiffs could not maintain this suit. If this ruling is sustained, there is to be judgment for the defendants.

*Batchelder & Faulkner*, for the plaintiffs.

*Don H. Woodward* and *Ira Colby*, for the defendants.

Walker, J. While the case does not disclose what the pleadings were, it is apparent that the practical issue tried related to the title of the chattels in question. The plaintiffs in effect claimed that the defendants wrongfully detained their property—not that the original taking was wrongful; and the defendants, claiming title in themselves, denied the title set up by the plaintiffs. By statute (Laws 1873, c. 21, s. 1; P. S., c. 241, s. 2) this method of pleading, which may not be in accordance with the rules of the common law (*Page* v. *Ramsdell*, 59 N. H. 575), is authorized in actions of replevin. *Kittredge* v. *Holt*, 55 N. H. 621; *Lothrop* v. *Locke*, 59 N. H. 532; *Sinclair* v. *Wheeler*, 69 N. H. 538. If the defendants' plea had been the general issue, *non cepit*, the question of title would have been immaterial (*Sinclair* v. *Wheeler*, *supra*); and upon that plea the plaintiffs might have been nonsuited. *Carter* v. *Piper*, 57 N. H. 217. It follows, that upon the case as presented the view most favorable to the plaintiffs is to consider the facts in their relation to the plea of property; if they have proved their title, they are entitled to judgment upon that plea.

But the facts do not support the plaintiffs' contention. The written contract between the parties did not vest the title of the personal property in the plaintiffs. The intention of the parties, plainly inferable from the language they employed, shows that the title and possession of the chattels were to remain in the defendants until delivery, which was to take place at a subsequent date. The contract does not purport to furnish evidence of a present

completed sale, but merely of an agreement for a sale. Nor are there any facts disclosed in the case indicating that the parties entertained a different intention. *Fuller* v. *Bean*, 34 N. H. 290, 303. The defendants were the exclusive owners of the property, and entitled to the use and benefit of it after the making of the contract as well as before. There is no evidence that they held the chattels as bailees of the plaintiffs, or that they retained the possession thereof in recognition of, or in subordination to, a title in the plaintiffs. There was no apparent reason for a separation of the ownership and right of possession; and as the contract did not in terms require such separation, but postponed the final completion of the sale to a subsequent time, it cannot be held that the title passed to the plaintiffs and the right of possession remained in the defendants. For some reason, the parties deemed a formal bill of sale necessary or convenient in the consummation of their contract. But how important such a document, if given, would have been on the question of the transfer of the title, it is not useful to consider, since there is no evidence that the title passed at any time.

The mere fact that the defendants committed a breach of their contract, by refusing or failing to give the plaintiffs possession of the property on or after the first day of December, did not transfer the title to the plaintiffs. Their refusal to deliver the property was not equivalent to a performance on their part. It was their privilege to commit a breach of their agreement (Holmes Com. Law, 301), for which they would be liable in an action for damages, but not in an action of replevin for the property. *Mead* v. *Johnson*, 54 Conn. 317; Cob. Rep., *s.* 289. Nor did the plaintiffs have the legal right to the possession, since that right followed the title which they never had. The plaintiffs' exception is overruled, and, according to the provisions of the case, the order is,

*Judgment for the defendants.*

All concurred.