WEBB *v.* CLARK COUNTY ET AL.

[No. 12,914. Filed December 13, 1927. Rehearing denied February 23, 1928.]

*Wilmer T. Fox,* for appellant.
*Burdette C. Lutz,* for appellees.

McMAHAN, J.—Appellant filed a claim before the board of commissioners of Clark county for a refund of taxes, which was refused. Appellant appealed to the circuit court, where a demurrer was sustained to the claim. And from that ruling this appeal is prosecuted.

The salient facts are, in substance, as follows: On and prior to February 13, 1923, the United States of America was the owner of, and in possession of, certain personal property and had the same stored in its Quartermaster's Depot in Jeffersonville township in Clark county. On said day, the government offered said property for sale at public auction on the following express printed terms of sale; "Twenty per cent of the bid must be paid in cash or certified check at the time and place of sale; balance ten days from date of sale in cash, certified check or letter of credit, otherwise the Government will retain the deposit and resell the property. No delivery will be permitted until goods are paid for in full. The Government reserves the right to reject any or all bids." Appellant was the highest bidder for said property, his bid being $267,457.32. He made a cash deposit of $53,000; and on February 23, 1923, the government mailed him a written notice of the acceptance of his bid and required him to pay the balance of the purchase price on or before March 14, 1923. Appellant made no further payment on said balance until March 14, 1923, when he paid the balance in full.

This property was purchased for the purpose of use in the factory of appellant in Philadelphia, Pennsylvania, and was not purchased for the purpose of resale in the State of Indiana, and was not in fact so used.

Appellant was, on March 1, 1923, a resident of the State of Pennsylvania and was not, on March 1, 1923, and has never since been, a resident of the State of Indiana. He did not, between March 1 and May 15, 1923, or at any other time, list and return said property for taxation in this state, but John Kenney, assessor of said Jeffersonville township, on April 20, 1923, without notice to appellant, listed said property as chattels on a schedule of personal property, on a form prescribed by the State Board of Tax Commissioners, in the name of

appellant, and valued and assessed the same in the aggregate sum of $256,111. No other property was listed or assessed by said assessor on said schedule. The assessor made no entry of said assessment on the assessment book of Jeffersonville township, did not include said schedule among the schedules of assessments made in the year 1923, or for any other year, made no entry of said assessment on his books, made no return thereof to the auditor of the county, and no further record of said assessment was made by any officer of Clark county or any other taxing officer or body, and said schedule is the only record of the pretended assessment. Thereafter, in April, 1923, the treasurer of Clark county computed taxes on said assessment for state, county and township taxes at the rate fixed for said Jeffersonville township on the first Monday in September, 1922, viz.: At $2.01 on each $100, the tax so computed being $5,147.81. Thereafter, on June 11, 1923, solely by virtue of said assessment of $256,111 noted on said schedule by said Kenney as assessor and said computation of taxes made by said treasurer thereon at the rate and by virtue of the alleged intention of appellant to remove said personal property from this state, but by virtue of no other assessment, said treasurer levied by distraint on said property so purchased by appellant as aforesaid for said pretended tax of $5,147.81 and his costs of $1.55, for the purpose of paying and satisfying said tax, and posted a notice that he had so levied on said property and forbidding its removal from the state unless the whole amount of the tax so levied was first paid.

On July 14, 1923, appellant filed a replevin suit to recover possession of said property so distrained, and secured possession of the property by giving bond. The court sustained a demurrer to the complaint therein and judgment was rendered against appellant requiring him to return said property so distrained, or, on failure

to so return the same, that the treasurer recover of him the sum of $5,971.41 and his costs in said action.

The judgment so rendered was, on appeal to this court, affirmed, it being held that appellant's remedy was by claim for a refund filed with the board of commissioners and not by replevin proceedings. (See *Webb* v. *Fifer* [1925], 84 Ind. App. 705, 146 N. E. 872.)

Appellant has since paid said judgment of $5,971.46 and the further sum of $731.52 as interest thereon and the costs of said suit and appeal, the amount so paid being $6,702.98, and which sum has not been disbursed or distributed by the treasurer to those entitled to the same.

Appellant contends: (a) That the acceptance of his bid by the government on February 23, 1923, under the terms of the sale, constituted an executory or uncompleted sale and that the legal title to the property on March 1 was in the government and not subject to taxation; and (b) that the assessment was void by reason of the method in which the property was listed by the assessor and the tax computed by the treasurer.

Property owned by the government of the United States is not subject to taxation, §14037, cl. 1, Burns 1926.

Appellee contends that title to the property in question passed from the government to appellant February 23, 1923, when the government notified appellant that his bid for the property had been accepted, and that the title to such property on March 1, was in appellant and subject to taxation. This is upon the theory that acceptance of the bid by the government completed the contract. We cannot concur in this contention. We think it clear that there was no contract of any character until February 23, when appellant's bid for the property was accepted. The acceptance of the bid had the effect of converting

appellant's bid into an executory contract for the purchase of the property by appellant. The title to the property remained in the government, and, in case appellant had failed to pay the balance of his bid within the time fixed, the amount of the deposit was to be retained by the government and the property was to be resold.

The difference between an executed and an executory contract of sale may be illustrated by an agreement to buy a horse. If a man agrees to buy a horse from another, pays the purchase price and takes the horse to his own stable, a contract takes place and the buyer becomes the owner of the horse and the seller becomes the owner of the money. The transaction is at an end; the contract is executed. The horse is the property of the buyer; he has a right to it available against all the world, a right *in rem*. Suppose, however, the seller agrees to deliver the horse, and the buyer to pay at a future time. The agreement gives the buyer a right to have the horse at a future time, but it does not vest the ownership of the horse in him. The contract is executory. He has a right to enforce his agreement against the seller upon the payment of the purchase price, a right *in personam*. So, in the instant case, appellant, upon the acceptance of his bid, had the right as against the government to pay the balance of his bid and to receive the property—a right *in personam*. He had an executory contract,—an intangible asset, and taxable, if at all, in Pennsylvania and not in Indiana.

One who purchases at a public sale made pursuant to a published notice, presumptively purchases upon the terms proposed. The terms stated in the notice bind both seller and purchaser. *Morgan* v. *East* (1890), 126 Ind. 42, 25 N. E. 867. Appellant was a purchaser of the property in question under a contract of sale, of which contract, the terms set forth

in the notice formed an essential part, and, until he complied with those terms, title did not vest in him, for it is elementary law that title does not completely pass until the terms of the contract have been complied with by the purchaser. The notice of sale under which appellant purchased the property provided that twenty per cent. of the purchase price must be paid at time and place of sale and that balance must be paid within ten days from the date of sale. It also provided that upon failure to pay the balance of the purchase price, the government would retain the *deposit* and resell the property, and that no delivery would be permitted until the goods were paid for in full.

As was said in *Silver* v. *Moore* (1912), 109 Me. 505, 84 Atl. 1072; "A contract of sale, and a sale, are quite distinct, although much confusion has arisen because the distinction has not been clearly kept in mind. The first is an agreement to transfer, the second is a transfer of title."

The Supreme Court of this state, in speaking on the subject, in *City of South Bend* v. *Martin* (1895), 142 Ind. 31, 53, 41 N. E. 315, said: "In an executed contract of sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded and without regard to the fact whether the goods be delivered to the buyer or remain in the possession of the seller; whereas in an executory contract of sale the goods remain the property of the seller till the contract is executed. . . . Where personal property is sold for cash on delivery, the sale is conditional, and the title to the property will not vest in the purchaser until the terms of the sale are complied with."

In the instant case, the payment of the balance of the purchase price was just as essential in order to conclude a contract of sale as was the deposit of the twenty per cent. at time of sale, and, until the whole of the purchase

price was paid, the property in the goods in question did not vest in appellant. *Straus* v. *Ross* (1865), 25 Ind. 300.

We hold that on March 1, 1923, the title to the property in question was in the United States, that the same was not taxable, and that the acts of the township assessor and treasurer of the county in attempting to assess the property were void.

Judgment reversed, with direction to overrule the demurrer and for further proceedings consistent with this opinion.

Dausman, J., absent.